UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ROBERT E. SALTEE,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Defendant. | CIV. 09-5029-JLV<br><br><br>ORDER |

**INTRODUCTION**

Plaintiff Robert Saltee filed a motion to enforce the settlement agreement in this case. (Docket 75). The government resists the motion. (Docket 80). Based on the analysis below, plaintiff's motion is denied.

**ANALYSIS**

Plaintiff filed an amended complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, alleging medical negligence against the defendant for the surgical care received during a bilateral knee replacement at the Arizona Veterans' Administration Center ("VA") on July 26, 2006. (Docket 6). The government denied plaintiff's allegations. (Docket 8).

On September 9, 2010, the parties filed a stipulation for compromise settlement and release of federal tort claims ("settlement agreement"). (Docket 70). On September 10, 2010, the court entered a judgment of dismissal with prejudice. (Docket 71).

On July 1, 2015, Mr. Saltee filed a motion seeking enforcement of certain terms of the settlement agreement.  (Docket 75).  The essence of Mr. Saltee's motion is that the government improperly asserted setoffs and recoupments through the VA against the funds received by Mr. Saltee in the settlement.  Id. at p. 1.  The government resists Mr. Saltee's motion on two grounds: (1) the court lacks subject matter jurisdiction to consider plaintiff's motion; and (2) the terms of the settlement agreement have not been violated.  (Docket 80 at p. 1).  The court must first resolve whether it has jurisdiction over plaintiff's motion and then, if jurisdiction exists, determine whether the government violated the settlement agreement.

SUBJECT MATTER JURISDICTION

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  In Kokkonen, neither the settlement agreement nor the district court's dismissal order "reserve[d] jurisdiction in the District Court to enforce the settlement agreement, indeed, [the order] did not so much as refer to the settlement agreement."  Id.  The Supreme Court acknowledged that "ancillary jurisdiction . . . . [exists] for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees . . . ."  Id. at 379-80 (internal citations omitted).

2

Focusing on the second factor "relating to the court's power to protect its proceedings and vindicate its authority," the Supreme Court found "that the power asked for here is quite remote from what courts require in order to perform their functions." Id. at 380.

Based on the facts before it, the Supreme Court concluded the district court did not have ancillary jurisdiction to enforce a settlement agreement because neither the parties nor the district court intended to "provide for the court's enforcement of a dismissal-producing settlement agreement . . . ." Id. at 381. Absent the district court's expressed or implied intention to retain jurisdiction to enforce the terms of the parties' settlement agreement, the Supreme Court held there was no "independent basis for federal jurisdiction." Id. at 382.

The district court retains "[a]ncillary jurisdiction to enforce a settlement agreement . . . 'if the parties' obligation to comply with the terms of the settlement agreement [is] made part of the order of dismissal—either by . . . a provision "retaining jurisdiction" over the settlement agreement . . . or by incorporat[ion of] the terms of the settlement agreement in the order.' " Miener By & Through Miener v. Missouri Department of Mental Health, 62 F.3d 1126, 1127 (8th Cir. 1995) (citing Kokkonen, 511 U.S. at 381). See also Morris v. City of Hobart, 39 F.3d 1105, 1110 (10th Cir. 1994) ("A district court can, however, retain jurisdiction over a settlement agreement if the order of dismissal shows an intent to retain jurisdiction or incorporates the settlement agreement.' ") (citing

3

Kokkonen, 511 U.S. at 380-81); McKay v. United States, 207 F. App'x 892, 894 (10th Cir. 2006) (citing Morris, 39 F.3d at 1110) (citing Kokkonen, 511 U.S. at 380–81); Rosner v. United States, 517 F. App'x 762, 765 (11th Cir. 2013) (quoting Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta, 701 F.3d 669, 672 (11th Cir. 2012) (referencing Kokkonen, 511 U.S. at 380-81)). "Ancillary jurisdiction to enforce the agreement exists in these situations because breach of the agreement violates the district court's judgment." Miener, 62 F.3d at 1127 (referencing Kokkonen, 511 U.S. at 381).

The court intended to retain jurisdiction to enforce the terms of the settlement agreement in this case. The court specifically referenced and incorporated the settlement agreement into the order of dismissal.

> Pursuant to the parties' stipulation for compromise settlement and release of Federal Tort Claims Act claims pursuant to 28 U.S.C. § 2677 and dismissal with prejudice (Docket 70), it is hereby
>
> ORDERED, ADJUDGED, AND DECREED that this matter is dismissed with prejudice with each party bearing their own costs, fees, and expenses.

(Docket 71). This language is one of the alternatives recognized by Kokkonen which permits the district court to retain jurisdiction over the settlement agreement. Kokkonen, 511 U.S. at 382.

VIOLATION OF THE SETTLEMENT AGREEMENT

Mr. Saltee initially asserted the government made a number of inappropriate setoffs and recoupments against the sum he received through the

settlement agreement. (Dockets 75 & 76). However, in his reply brief, Mr. Saltee acknowledged that the claims asserted were more the result of the VA's lack of clarity in its communications with him and not the result of a violation of the settlement agreement.

Initially, the parties both acknowledge the settlement agreement would require a stoppage of § 1151 benefits until the full amount of the settlement, $245,000, had been set-off by those suspended benefits.[1] See Dockets 70 ¶ 4; 76 at p. 5 and 80 at p. 7. The balance of plaintiff's motion addresses issues which the court finds were resolved by the government's brief. Rather than restate plaintiff's arguments, the court will focus on the government's responses and Mr. Saltee's reply brief.

    1. By the time resolution occurred in the FTCA litigation, Plaintiff had already received a total of $124,000 in § 1151 benefits. (Docket 80 at p. 9).

"For a number of years prior to the . . . settlement being reached, Saltee was receiving § 1151 Benefits . . . . [T]he amount he had received in those disability benefits prior to the . . . settlement totaled $124,000." (Docket 83 at p. 7).

---

[1]Mr. Saltee argues the government set-off should not include the attorney's fees, sales tax and litigation costs he had to pay out of the settlement. (Dockets 76 at p. 6 & 83 at pp. 7-8). This argument is misplaced as federal law specifically requires the suspension of § 1151 benefits "until the aggregate amount of benefits which would have been paid . . . equals the total amount included in such . . . settlement . . ." 38 U.S.C. § 1151(b)(1) (emphasis added).

    2. The VA has made no offsets regarding the $124,000 Plaintiff received prior to the settlement. (Docket 80 at p. 10).

"The Government rightfully recognizes that Saltee's 'confusion is understandable' because 'the VA correspondence . . . never mentions the § 1151 benefits he received prior to September 2010.'" (Docket 83 at p. 26) (referencing Docket 80 at p. 10.)

    3. Based upon the settlement and as a matter of law, the VA should have discontinued compensation payments under § 1151 starting with the payment for October 1, 2010. . . . The VA failed to discontinue the § 1151 payments and Plaintiff continued to receive § 1151 benefits until November 16, 2011. . . . [T]he § 1151 benefits received by the Plaintiff for the period between October 1, 2010, and November 16, 2011, created a post settlement benefit overpayment in the amount of $17,192. (Docket 80 at p. 7-8).

"[T]hanks to the clarity of the Government's Brief . . . Saltee now does not refute that he was inadvertently overpaid . . . ." (Docket 83 at p. 3).

    4. Through May 29, 2015, the VA has received offsets from [Treasury Offset Program] in the total amount of $5,159.10. (Docket 80 at p. 8).

Mr. Saltee "does not dispute that 'as of May 29, 2015' the remaining debt [has been reduced] . . . . With additional offsets having occurred in June and July (and perhaps by now, August also), that . . . figure has been further reduced. . . . [Mr.] Saltee does not refute that the Government may rightfully collect those sums by 'recouping' them from monies to which he is otherwise entitled." (Docket 83 at pp. 3-4).

6

> 5. Once the $17,192 overpayment is recovered through offset and the $245,000 settlement is recouped . . . Plaintiff may be eligible for § 1151 benefits once again. . . . [B]y August 1, 2017, the recoupment for the tort settlement will be completed." (Docket 80 at p. 10-11).

"[W]hat is occurring is an ongoing periodic charting of the canceled-out payments of § 1151 Benefits that it would otherwise have made to [Mr. Saltee], leading up to when the sum of $245,000 is reached. At the current pace and amount of the set-offs, the Government projects that the final date for this to occur is 'by August 1, 2017.' . . . Again, Saltee appreciates the clarity of explanation in the Government's Brief." (Docket 83 at p. 5) (referencing Docket 80 at p. 11).

Mr. Saltee's issues regarding the current status of his accessibility to VA benefits have been resolved. However, Mr. Saltee asserts two additional issues:

1. During those 14 months of overpaid installments, had there been other monetary government benefits that he would have received, and which would not have been withheld from him except for having been superceded (or canceled out) by his then on-going receipt of § 1151 Benefits?

2. Once the last of the remaining $3,965.90 overpayment is recouped, whenever that is, what assurance does he have that the VA will cease the recoupment of other benefits, and promptly allow those funds to flow to him?

(Docket 83 at pp. 27-28). Mr. Saltee suggests "[t]he bigger question, though, is whether the 'overpaid' § 1151 Benefits for those months were in lieu of other government benefits that would have been paid to him but for those § 1151 Benefits. The Government does not address that question one way, and Saltee

7

has no way of knowing what the V.A. knew in that regard during those months." Id. at p. 25 (italics omitted).

Mr. Saltee presents no evidence to support these rhetorical questions. Absent supporting evidence, the questions do not create an "actual controversy" under Article III of the Constitution. "In order to present a 'controversy,' a question must not be abstract but must define an issue which is concrete and specific." Cass County v. United States, 570 F.2d 737, 740 (8th Cir. 1978). Plaintiff's questions are "premature" and are not "sufficiently focused" to require a decision by the court. Id. "Courts should be reluctant to decide cases that require them to speculate on the basis of hypothetical facts." Id. at 741. The court concludes plaintiff's questions are "not ripe for judicial resolution." In re Hoefflin, 715 F.2d 1309, 1311 (8th Cir. 1983) (internal quotation marks omitted).

## ORDER

Based on the above analysis, it is

ORDERED that the court retains ancillary jurisdiction to enforce the settlement agreement.   (Docket 70).

IT IS FURTHER ORDERED that plaintiff's motion (Docket 75) is denied.

Dated March 8, 2016.

       BY THE COURT:

       /s/ *Jeffrey L. Viken*
       JEFFREY L. VIKEN
       CHIEF JUDGE